U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MAR 0 6 2007

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **JOHN DEEMER, ET AL** | **DOCKET NO. 06-CV-1775** |
| **VERSUS** | **JUDGE DRELL** |
| **RICHARD STALDER, ET AL** | **MAGISTRATE JUDGE KIRK** |

### REPORT AND RECOMMENDATION

Before the court are civil rights complaints filed by multiple plaintiffs, pro se and in forma pauperis. The plaintiffs are seeking injunctive and declaratory relief as well as class certification. Plaintiffs allege that they have been denied due process of law and other constitutional rights by the defendants. The plaintiffs are inmates in the custody of the Louisiana Department of Safety and Corrections and are housed at Winn Correctional Center ("WCC"). Since this action was filed, however, John Deemer has been moved to Allen Correctional Center. The complaints were originally filed in the Middle District of Louisiana, where they were consolidated and then transferred to this district.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs John G. Deemer, James Bland, Charles Ray Sherman, Jr., Wade Adams, Charles Nelson, and John Farmer filed identical complaints seeking injunctive and declaratory relief and class certification. [Doc. #42, p.1] Other inmates have filed "Declarations," but they are not parties to the lawsuit.

Plaintiffs claim that overcrowding at Winn Correctional Center ("WCC") and policies and

procedures of the Louisiana Department of Public Safety and Corrections ("DPSC") and Corrections Corporation of America ("CCA") have led to the violation of Plaintiffs' constitutional rights. Specifically, the plaintiffs claim that they are consistently denied due process of law, subjected to cruel and unusual punishment, denied adequate healthcare, and denied their constitutional rights of free speech and access to courts. Plaintiffs allege that the deprivations stem from severe overcrowding and poor policies that do not meet applicable standards. Plaintiffs seek only injunctive relief.[1]

## LAW AND ANALYSIS

Plaintiffs argue that a number of ongoing constitutional violations are caused by overcrowding at WCC and other Louisiana prisons. First, Plaintiffs allege that the WCC dormitories have forty-four to fifty inmates living in a space that is eighty feet by twenty four feet. Those forty-four to fifty inmates have to share just two toilets, one urinal, two sinks, two showers, and one drinking cooler. [Doc. #1-2, p.14] The high population leaves inmates little to no privacy; they are

---

[1] As to WCC, Plaintiffs seek an order that WCC: provide inmates with lager living quarters; implement effective policies and practices to protect inmates from excessive force; implement adequate and effective means of reporting, investigating, and remedying excessive force complaints; obtain an effective monitoring system; terminate the use of pepper spray or other chemical agents; only use handcuffs, shackles and restraints in extraordinary circumstances; only use isolation in extraordinary circumstances; implement policies to protect inmates from being required to perform abusive and demeaning physical acts and to protect inmates from sexual abuse; implement adequate pre-hiring screening and monetary compensation for guards; provide inmates with mental health care; provide inmates with effective health care in a timely manner; provide inmates with a nutritionally adequate diet; provide inmates with privacy while in showers and while using toilets; allow for effective means of controlling temperatures in cells and dormitories to make the inmates reasonably comfortable; implement better sanitation and provide hygiene supplies; provide adequate educational and vocational programs and training, including a free public education; provide inmates with adequate recreation especially on weekends; afford inmates rehabilitation to ease transition back into society; and, provide inmates meaningful and confidential access to attorneys and family members.

constantly in the presence of other inmates. Plaintiffs claim that inmates must urinate and defecate in front of others, including female security guards.

Moreover, it is alleged that crowded cells and too many inmates living in close quarters leave inmates knowing that they may be physically attacked or molested by other inmates while they sleep. According to Plaintiffs, there are no guards inside each dormitory; rather, there are generally two guards assigned to cover a total of eight dormitories. Plaintiffs state that "no security officers keep watch over the dormitory rooms" at WCC. The unguarded cells and dormitories leave inmates exposed to an ever present risk of assault, rape, and other violence, even at the hands of inmates who have HIV or AIDS and "nothing to live for." [Doc. #1-2, p.15] An example includes cells with three inmates where "two-on-one confrontations practically guarantee the capitulation of the abused third cell mate." [Doc. #1-2, p. 15]

According to the plaintiffs, the overcrowding does not only affect the inmates while in their cells or dormitories. They claim that the day rooms used for recreation serve double or triple the number of inmates for which they were designed. Because of the excessive number of inmates, access to the gymnasium, outdoor field, craft shops and libraries are limited, and the dining halls are overcrowded. It is alleged that inmates have to spend most of their time in the living quarters because of the shortage of guards. When inmates do have access to the yard, they have no supervision; the few guards available stand at the gates to oversee inmates going in and out of the yard.

Additionally, Plaintiffs allege that the overcrowding has lead to negative physical and psychological effects including the spread of disease, stress, tension, hostility, and depression. There is an increase of blood pressure, aggressive behavior, and withdrawal. Overcrowding has

3

contributed to an increased rate of disciplinary offenses, psychiatric commitments, and suicide. Also, it is alleged that there is an insufficient number of medical staff relative to the inmate population, that some medical personnel are unqualified and unsupervised, that some unsound medical procedures are performed, and medical records are not properly maintained. Plaintiffs submit that proper medical treatment is often sacrificed because of security concerns.

Next, the plaintiffs claim that the guards routinely use excessive force, are poorly trained, and have little control over the inmates because of the shortage of guards. Plaintiffs allege that cruel treatment by the guards has lead to severe injury and even the death of some inmates. [Doc. #1-2, p.25] They also claim that inmates known as "writ writers" are generally the targets of excessive force.

The Eighth Amendment dictates that cruel and unusual punishment shall not be inflicted, and the amendment is applicable to the States by reason of the Due Process Clause of the Fourteenth Amendment. Robinson v. California, 370 U.S. 660, 675 (1962). The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. Helling v. McKinney, 509 U.S. 25, 31 (1993). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. Farmer v. Brennan, 511 U.S. 825, 832 (1994). Prison officials must provide humane conditions of confinement; they must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measure to ensure the safety of the inmates. Id. The Fifth Circuit has worded the test as "requiring extreme deprivation of any 'minimal civilized measure of life's necessities.'" Gates v. Cook, 376 F.3d 323, 333 (5th Cir. 2004)(citing Davis v. Scott, 157 F.3d 1003, 1006 (5th Cir 1998). Further, mental health needs are no less serious than physical needs. Id. The Supreme Court has made clear that the

standards against which court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society" and not the standards in effect during the time of the drafting of the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 102 (1976) (internal quotation omitted).

A prison official has violated the Eighth Amendment when he 1) shows a subjective deliberate indifference to 2) conditions posing a substantial risk of serious harm to the inmate. See Farmer, 511 U.S. at 833-34. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. Id. at 842.

Conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise. Wilson v. Seiter, 501 U.S. 294, 304 (1991). The Supreme Court has noted that "the length of confinement cannot be ignored... A filthy, overcrowded cell ... might be tolerable for a few days and intolerably cruel for weeks or months." Gates v. Cook, 376 F.3d 323, 333 (5th Cir. 2004) (citing Hutto v. Finney, 437 U.S. 678, 686-87 (1978). It is also important to note that the inmate need not show that death or serious illness has occurred. Id. (citing Helling, 509 U.S. at 32 ("It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them.").

Plaintiffs have submitted well-plead and articulate complaints that specifically detail their theories as to why they are entitled to injunctive relief. The have alleged deliberate indifference on

5

the part of all defendants, and seek an injunction directing the defendants to change prison policies and procedures at WCC. However, Plaintiffs set forth no specific allegations of personal involvement against some of the defendants, and those defendants have no policy-making authority; therefore, the following defendants should be dismissed from the suit: **Jannitta Antoine** (Deputy Secretary of Louisiana Department of Public Safety and Corrections), **Bernard E. Boudreaux III** (under-secretary of Louisiana Department of Public Safety and Corrections), **Whalen Gibbs** (Assistant Secretary of Louisiana Department of Public Safety and Corrections), **Johnny Creed** (Chief of Operations of the Louisiana Department of Public Safety and Corrections), **Richard P. Seiter** (Executive Vice President of CCA), **William Rusak** (Executive Vice President of CCA), **John Tighe** (Vice President of Health Services for CCA), **Dennis Bradby** (Vice President of Inmate Programs for CCA), **Tim Keith** (deputy warden at WCC), **Angela Martin** (deputy warden at WCC), **Virgil Lucas** and **Tommy Glover** (chief of security at WCC for CCA), **Nicole Walker** (Program Manager at WCC for CCA), and **Mona Heyse** (Quality Assurance Manager at WCC for CCA). Furthermore, if Plaintiffs would succeed in obtaining an injunction against the remaining defendants, Stalder, CCA, and Wilkinson, such relief necessarily affects the other named defendants. Therefore, in addition to those defendant's inability to make or change policy, those defendants are not necessary for injunctive relief to occur.

As for the Louisiana Department of Public Safety and Corrections, that entity is an alter ego of the State of Louisiana and, under the Eleventh Amendment, it is immune from suit. See Champagne v. Jefferson Parish Sheriff's Office, 188 F.3d 312, 313-14 (5th Cir. 1999); Brown v. Day, 1999 U.S. Dist. LEXIS 19556 (D. La. 1999). Therefore, the Louisiana Department of Public Safety

and Corrections should be dismissed.[2]

In an amended complaint, Plaintiffs ask for certification of a class of all inmates confined in institutions operated by the DPSC and CCA in Louisiana. At this point, Plaintiff's have not established that the Rule 23 requisites governing class certification have been satisfied. Plaintiffs bear the burden of establishing the requirements of Rule 23 and failure to meet any one of the necessary criteria will defeat the motion. It is recommended that a decision regarding class certification be deferred until the defendants file responsive pleadings.

Also, since Plaintiff Deemer was transferred to Allen Correctional, he filed an Amended Complaint / Declaration on February 8, 2007, consisting of a request for administrative remedy allegedly filed at Allen Correctional. The allegations in that document are similar to the allegations against WCC and CCA. Because Allen is a separate facility with a different number of inmates, guards, cells, and dormitories than WCC, and different policies/procedures than WCC, Plaintiff should file a separate action regarding those claims.

Therefore, for the forgoing reasons it is RECOMMENDED that the claims for injunctive relief against Jannitta Antoine, Bernard E. Boudreaux III, Whalen Gibbs, Johnny Creed, Richard P. Seiter, William Rusak, John Tighe, Dennis Bradby, Tim Keith, Angela Martin, Virgil Lucas, Tommy Glover, Nicole Walker, Mona Heyse, and The Louisiana Department of Public Safety and Corrections should be DISMISSED WITH PREJUDICE for failing to state a claim for which relief can be granted. To the extent that Deemer has alleged claims against Allen Correctional Center, it is RECOMMENDED that the claims be DISMISSED WITHOUT PREJUDICE. The remaining

---

[2]As for claims against other public officials, the United States Supreme Court, in Ex Parte Young, 209 U.S. 123 (1908), expressed the view that suits against public officials for injunctive relief constitute a narrow exception to the Eleventh Amendment.

defendants will be served in accordance with the Memorandum Order to be filed in this matter.

**THUS DONE AND SIGNED** in Chambers at Alexandria, Louisiana, this _____ day of _____, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE