RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
ALEXANDRIA, LOUISIANA
DATE _____11/27/07_____
BY _____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JOHN DEEMER, et al., <br> Plaintiffs | CIVIL ACTION <br> NO. CV06-1775-A |
| VERSUS | |
| RICHARD STALDER, et al., <br> Defendants | JUDGE DEE D. DRELL <br> MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court are complaints filed pursuant to 28 U.S.C. § 1983, in forma pauperis, by pro se plaintiffs John Deemer ("Deemer"), James Bland ("Bland"), Charles Ray Sherman, Jr. ("Sherman"), Wade Adams ("Adams"), Charles Nelson ("Nelson"), and John Farmer ("Farmer") on October 10, 2006, in the U.S. District Court for the Middle District of Louisiana. The complaints were consolidated and transferred to the Western District of Louisiana, Alexandria Division (Doc. Items 15, 16)), and amended on January 19, 2007 (Doc. Item 41). The remaining defendants are Richard Stalder ("Stalder") (Secretary of the Louisiana Department of Public Safety and Corrections), Corrections Corporation of America ("CCA") (operator of the Winn Correctional Center ("WCC") in Winnfield, Louisiana), John D. Ferguson ("Ferguson") (a corrections officer employed at WCC), and Tim Wilkinson ("Wilkinson") (warden

of WCC).[1] Plaintiffs alleged that, while confined in the WCC, they have been subjected to overcrowding, understaffed security and supervision, inadequate medical care, inadequate mental health care, lack of special accommodations for physically handicapped inmates, lack of assistance mentally handicapped inmates, inadequate disciplinary procedures, inadequate disciplinary procedures, and no access to the courts.[2] For relief, plaintiffs ask for declaratory judgments, injunctive relief, and monetary damages.

Defendants filed a motion to dismiss the complaints due to plaintiffs' failure to exhaust their administrative remedies (Doc. Item 81), to which plaintiffs filed a brief in opposition (Tr. p. 84). Defendants' motion is now before the court for disposition.

<u>Law and Analysis</u>

Defendants contend plaintiffs' complaints should be dismissed for failure to exhaust their administrative remedies.

Section 1997e(a), as amended by the Prison Litigation Reform Act (PLRA), provides that "[n]o action shall be brought with respect to prison conditions under Section 1983...by a prisoner confined in any jail, prison, or other correctional facility until

---

[1] The other named defendants have been dismissed (Doc. Items 59, 65).

[2] Deemer is currently confined in the Allen Correctional Center in Kinder, Louisiana, but all other plaintiffs remain in the WCC.

such administrative remedies as are available are exhausted."[3] Exhaustion is mandatory, irrespective of the forms of relief sought and offered through administrative remedies. Booth v. Churner, 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819 (2001). The exhaustion requirement of 42 U.S.C. § 1997e applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002). Also, Days v. Johnson, 322 F.3d 863 (5th Cir. 2003); Clifford v. Gibbs, 298 F.3d 328, 330-331 (5th Cir. 2002); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001). Resort to a prison grievance process must precede resort to a court.

---

[3] On April 20, 2002, the Louisiana Department of Public Safety and Corrections published new rules in the Louisiana Administrative Register, Volume 28, Issue 4, and set forth at 22 La. A.D.C. Pt. 1, § 325 (see Appendix I). The new rules encourage inmates to resolve problems within the institution informally before initiating the formal process which consists of two steps. The first step consists of writing a letter to the warden in which the inmate briefly sets out the basis for his or her claim and the relief sought. The second step is an appeal to the Secretary of the DPSC in which the inmate indicates that he or she is not satisfied with the warden's response. The rules then provide: "If an inmate is not satisfied with the Second Step response, he may file suit in District Court. The inmate must furnish the administrative remedy procedure number on the court forms." Under the new procedure, DPSC officials are to simply review, and hopefully resolve, inmate claims before a suit is filed. The statutory provisions then address the applicability and the nature of judicial review if a suit is filed. Finally, La.R.S. 15:1172(D) states that "[a]ny contractor operating a private prison facility shall adhere to all provisions of this Part and the administrative remedy procedures adopted by the department in accordance with this Part." Therefore, these rules are applicable to the WCC and this case.

Porter, 534 U.S. at 529, 122 S.Ct. at 990.

The exhaustion requirement imposed by amended § 1997e is not jurisdictional. Wendell v. Asher, 162 F.3d 887, *890 (5th Cir. 1998). The exhaustion requirement may be subject to certain defenses such as waiver, estoppel, or equitable tolling. Wendell, 162 F.3d at 890. Also, Days v. Johnson, 322 F.3d 863, 866 (5th Cir. 2003). Available administrative remedies are exhausted in compliance with the PLRA when the time limits for the prison's response set forth in the prison grievance procedures have expired. Gates v. Cook, 376 F.3d 323, 332 (5th Cir. 2004), citing Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998).

In the recent Supreme Court case of Jones v. Bock, 127 S.Ct. 910 (U.S. 1/22/2007), the Supreme Court held that the defense of lack of exhaustion in prisoner civil rights and Bivens[4] cases is an affirmative defense which must be raised by the defendants. Defendants bear the burden of proving their affirmative defense. See Roberts v. Barreras, 484 F.3d 1236 (10th Cir. 2007); Dole v. Chandler, 438 F.3d 804 (7th Cir. 2006); Kramer v. Wilkinson, 226 Fed. Appx. 461 (6th Cir. 2007); Gonzales v. Smith, 2007 WL 3046160 (E.D.La. 2007).

In the case at bar, although defendants have affirmatively raised this defense in their motion to dismiss, they failed to show

---

[4] Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971).

lack of exhaustion. Defendants contend that each plaintiff has failed to exhaust each claim raised in the complaint. Defendants have submitted an affidavit from Mona Heyse, the "Quality Assurance Manager" at WCC, who states the grounds each plaintiff has filed an ARP on and whether both steps of the ARP process were completed for each plaintiff. However, Heyse's affidavit does not indicate how she knows whether or not plaintiffs' second step ARPs (filed with the Department of Public Safety and Corrections) have been reviewed, does not show whether the WCC officials complied with the time limitations in reviewing the first step ARPs, and copies of the ARPs filed by each plaintiff and all responses thereto have not been provided to the court. Thus, defendants have not carried their burden of proving the affirmative defense of exhaustion.

Moreover, Plaintiffs contend in their brief (Doc. Item 84) that, although numerous grievances have been filed, plaintiffs were not furnished with copies of their ARP's (carbon paper is no longer available at WCC for inmates to make copies), plaintiffs were not apprised of whether their ARP's were received by the proper prison official, defendants failed to respond to all of the ARPs, and defendants did not respond in a timely manner to some of the ARPs. If, in fact, WCC officials are not complying with the time limits set forth in the Adult Administrative Remedy Procedures or are otherwise not complying with the administrative remedy procedures, then the exhaustion requirements would be deemed waived or

5

otherwise fulfilled.  See Gates, 376 F.3d at 332.

Plaintiffs submitted copies of one ARP and three responses with their brief (Doc. Item 84). One response, to an ARP filed by Deemer, was rejected at the first step by a WCC official on December 21, 2006, for being five pages long instead of two; according to the Adult Administrative Remedy Procedures, as set forth at 22 La. A.D.C. Pt. 1, § 325, that response is inappropriate (See Appendix I). Another ARP first step response was clearly untimely, since the response was issued over two months after the grievance was received. These tend to indicate that WCC officials are not complying with the Louisiana Adult Administrative Remedy Procedures.

Since defendants have not proven that plaintiffs have not exhausted their administrative remedies, and plaintiffs' evidence tends to show a waiver of exhaustion may be appropriate, defendants' motion to dismiss for lack of exhaustion should be denied at this time.[5]

---

[5] Moreover, plaintiffs have moved for class certification (Doc. Items 42, 54, 55). The order issued on June 15, 2007, denying those motions, has been vacated, and the motions for class certification will be reconsidered.
    Exhaustion of an issue by one member of a certified class of prisoners satisfies the exhaustion requirement on that issue for all members of the class. Gates v. Cook, 376 F.3d 323 (5th Cir. 2004). Also, Chandler v. Crosby, 379 F.3d 1278 (11th Cir. 2004); McGoldrick v. Werholtz, 185 Fed. Appx. 741 (10th Cir. 2006). Accordingly, the motions for class certification should be decided prior to determining whether plaintiffs have exhausted their administrative remedies.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion to dismiss be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 27th day of November, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

## **APPENDIX I**

LOUISIANA ADMINISTRATIVE CODE

1. TITLE 22. CORRECTIONS, CRIMINAL JUSTICE AND LAW ENFORCEMENT

PART I. CORRECTIONS

CHAPTER 3. ADULT AND JUVENILE SERVICES

SUBCHAPTER A. GENERAL

Current with documents received through August 15, 2007

**§ 325.Adult Administrative Remedy Procedures**

A. Administrative Remedy Procedure

1. On September 18, 1985, the Department of Public Safety and Corrections installed in all of its adult institution a formal grievance mechanism for use by all inmates committed to the custody of the department. The process bears the name Administrative Remedy Procedure (ARP). Inmates are required to use the procedure before they can proceed with a suit in federal and state courts.

2. Inmates are encouraged to continue to seek solutions to their concerns through informal means, but in order to insure their right to use the formal procedure, they should make their request to the warden in writing within a 90 day period after an incident has occurred. If, after filing in the formal procedure an inmate receives a satisfactory response through informal means, the inmate may request (in writing) that the warden cancel his formal request for an administrative remedy.

3. All inmates may request information about or assistance in using the procedure from their classification officer or from a counsel substitute who services their living area.

4. Original letters of request to the wardens should be as brief as possible. Inmates should present as many facts as possible to answer all questions (who, what, when, where, and how) concerning the incident. If a request is unclear or the volume of attached material is too great, it may be rejected and returned to the inmate with a request for clarity or summarization on one additional page. The deadline for this request begins on the date the resubmission is received in the warden's office.

5. Once an inmate's request procedure, he must use the manila envelope that is furnished to him with this first step to continue in the procedure. The flaps on the envelope may be tucked into the envelope for mailing to the facility's ARP screening officer.

B. Purpose. Corrections Services has established the administrative remedy procedure through which an inmate may seek formal review of a complaint which relates to any aspect of his incarceration if less formal methods have not resolved the matter. Such complaints and grievances include, but are not limited to any and all claims seeking monetary, injunctive, declaratory, or any other form of relief authorized by law and by way of illustration includes actions pertaining to conditions of confinement, personal injuries, medical malpractice, time computations, even though urged as a writ of habeas corpus, or challenges to rules, regulations, policies, or statutes. Through this procedure, inmates shall receive reasonable responses and where appropriate, meaningful remedies.

C. Applicability. Inmates may request administrative remedies to situations arising from policies, conditions, or events within the institution that affect them personally. There are procedures already in place within all DPS&C institutions which are specifically and expressly incorporated into and made a part of this administrative remedy procedure. These procedures shall constitute the administrative remedies for disciplinary matters and lost property claims. The following matters shall not be appealable through this administrative remedy procedure:

1. court decisions and pending criminal matters over which the department has no control or jurisdiction;

2. pardon board and parole board decisions (under Louisiana law, decisions of these boards are discretionary, and may not be challenged);

3. Louisiana Risk Review Panel recommendations;

4. lockdown review board decisions (inmates are furnished written reasons at the time this decision is made as to why they are not being released from lockdown, if that is the case. The board's decision may not be challenged. There are, however, two bases for request for administrative remedy on lockdown review board hearings):

a. that no reasons were given for the decision of the board;

b. that a hearing was not held within 90 days from the offender's original placement in lockdown or from the last hearing. There will be a 20-day grace period attached hereto, due to administrative scheduling problems of the board; therefore, a claim based on this ground will not be valid until 110 days have passed and no hearing has been held. As used in this procedure, the following definitions shall apply.

D. Definitions

ARP Screening Officer—a staff member, designated by the warden, whose responsibility is to coordinate and facilitate the administrative remedy procedure process.

Days—calendar days.

Emergency Grievance—a matter in which disposition within the regular time limits would subject the inmate to a substantial risk of personal injury, or cause other serious and irreparable harm to the inmate.

Grievance—a written complaint by an inmate on the inmate's own behalf regarding a policy applicable within an institution, a condition within an institution, an action involving an inmate of an institution, or an incident occurring within an institution.

E. Policy. All inmates, regardless of their classification, impairment, or disability, shall be entitled to invoke this grievance procedure. It shall be the responsibility of the warden to provide appropriate assistance for inmates with literacy deficiencies or language barriers. No action shall be taken against an inmate for the good faith use of or good faith participation in the procedure. Reprisals of any nature are prohibited. Inmates are entitled to pursue, through the grievance procedure, a complaint that a reprisal occurred.

1. Reviewers. If an inmate registers a complaint against a staff member, that employee shall not play a part in making a decision on the request. However, this shall not prevent the employee from participating at the step one level, since the employee complained about may be the best source from which to begin collecting information on an alleged incident. If the inmate is not satisfied with the decision rendered at the first step, he should pursue his grievance to the assistant secretary of Adult Services via the second step.

2. Communications. Inmates must be made aware of the system by oral explanation at orientation and should have the opportunity to ask questions and receive oral answers. The procedures shall be posted in writing in areas readily accessible to all inmates.

3. Written Responses. At each stage of decision and review, inmates will be provided written answers that explain the information gathered or the reason for the decision reached along with simple directions for obtaining further review.

F. Procedure

1. Screening. The ARP screening officer will screen all requests prior to assignment to the first

step. The screening process should not unreasonably restrain the inmate's opportunity to seek a remedy.

a. If a request is rejected, it must be for one of the following reasons, which shall be noted on Form ARP.

I. This matter is not appealable through this process, such as:

(a). court decisions;

(b). parole board/pardon board decisions;

(c). Louisiana Risk Review Panel recommendations;

(d). lockdown review board (refer to Subsection C, "Applicability").

ii. There are specialized administrative remedy procedures in place for this specific type of complaint, such as:

(a). disciplinary matters;

(b). lost property claims.

iii. It is a duplicate request.

iv. In cases where a number of inmates have filed similar or identical requests seeking administrative remedy, it is appropriate to respond only to the inmate who filed the initial request. Copies of the decision sent to other inmates who filed requests simultaneously regarding the same issue will constitute a completed action. All such requests will be logged.

v. The complaint concerns an action not yet taken or a decision which has not yet been made.

vi. The inmate has requested a remedy for another inmate.

vii. The inmate has requested a remedy for more than one incident (a multiple complaint).

11

viii. Established rules and procedures were not followed.

ix. If an inmate refuses to cooperate with the inquiry into his allegation, the request may be denied due to lack of cooperation.

x. There has been a time lapse of more than 30 days between the event and the initial request, unless waived by the warden.

b. Notice of the initial acceptance or rejection of the request will be furnished to the inmate.

2. Initiation of Process. Inmates should always try to resolve their problems within the institution informally, before initiating the formal process. This informal resolution may be accomplished through discussions with staff members, etc. If the inmate is unable to resolve his problems or obtain relief in this fashion, he may initiate the formal process.

a. The method by which this process is initiated is by a letter from the inmate to the warden. For purposes of this process, a letter is:

I. any form of written communication which contains this phrase:

"This is a request for administrative remedy;" or

ii. Form ARP-1 at those institutions that wish to furnish forms for commencement of this process.

b. No request for administrative remedy shall be denied acceptance into the administrative remedy procedure because it is or is not on a form; however, no letter as set forth above shall be accepted into the process unless it contains the phrase:

"This is a request for administrative remedy."

c. Nothing in this procedure should serve to prevent or discourage an inmate from communicating with the warden or anyone else in the Department of Public Safety and Corrections. The requirements set forth in this document for acceptance into the administrative remedy procedure are solely to assure that incidents which may give rise to a cause of action will be handled through this two step system of review. All forms of communication to the warden

will be handled, investigated, and responded to as the warden deems appropriate.

d. If an inmate refuses to cooperate with the inquiry into his allegation, the request may be denied by noting the lack of cooperation on the appropriate step response and returning it to the inmate.

3. Multiple Requests. If an inmate submits multiple requests during the review of a previous request, they will be logged and set aside for handling at such time as the request currently in the system has been exhausted at the second step or until time limits to proceed from the first step to the second step have lapsed. The warden may determine whether a letter of instruction to the inmate is in order.

4. Reprisals. No action shall be taken against anyone for the good faith use of or good faith participation in the procedure.

a. The prohibition against reprisals should not be construed to prohibit discipline of inmates who do not use the system in good faith. Those who file requests that are frivolous or deliberately malicious may be disciplined under the appropriate rule violation described in the DPS&C "Disciplinary Rules and Procedures for Adult Inmate."

G. Process

1. First Step (Time Limit 40 days)

a. The inmate commences the process by writing a letter to the warden, in which he briefly sets out the basis for his claim, and the relief sought (refer to Subsection F, "Procedure-Initiation of Process" for the requirements of the letter). The inmate should make a copy of his letter of complaint and retain it for his own records. The original letter will become a part of the process, and will not be returned to the inmate. The institution is not responsible for furnishing the inmate with copies of his letter of complaint. This letter should be written to the warden within 90 days of an alleged event. (This requirement may be waived when circumstances warrant. The warden, or his designee, will use reasonable judgment in such matters.) The requests shall be screened by the ARP screening officer and a notice will be sent to the inmate advising that his request is being processed or is being rejected. The warden may assign another staff person to conduct further fact-finding and/or information gathering prior to rendering his response. The warden shall respond to the inmate within 40 days from the date the request is received at the first step.

b. For inmates wishing to continue to the second step, sufficient space will be allowed on the response to give a reason for requesting review at the next level. There is no need to rewrite the original letter of request as it will be available to all reviewers at each step of the process.

2. Second Step (Time Limit 45 days)

a. An inmate who is dissatisfied with the first step response may appeal to the secretary of the Department of Public Safety and Corrections by so indicating that he is not satisfied in the appropriate space on the response form and forwarding it to the ARP screening officer within 5 days of receipt of the decision. A final decision will be made by the secretary and the inmate will be notified within 45 days of receipt. A copy of the secretary's decision will be sent to the warden.

b. If an inmate is not satisfied with the second step response, he may file suit in district court. The inmate must furnish the administrative remedy procedure number on the court forms.

3. Monetary Damages

a. Department of Public Safety and Corrections based upon credible facts within a grievance or complaint filed by an inmate, may determine that such an inmate is entitled to monetary damages where monetary damages are deemed by the department as appropriate to render a fair and just remedy.

b. Upon a determination that monetary damages should be awarded, the remaining question is quantum, or the determination as to the dollar amount of the monetary damages to be awarded. The matter of determining quantum shall be transferred to the Office of Risk Management of the Division of Administration which shall then have the discretionary power to determine quantum. The determination reached by the Office of Risk Management shall be returned to the Department of Public Safety and Corrections for a final decision. If a settlement is reached, a copy of the signed release shall be given to the warden on that same date.

4. Deadlines and Time Limits

a. No more than 90 days from the initiation to completion of the process shall elapse, unless an extension has been granted. Absent such an extension, expiration of response time limits shall entitle the inmate to move on to the next step in the process. Time limits begin on the date the request is assigned to a staff member for the first step response.

b. An inmate may request an extension in writing of up to five days in which to file at stage of the process. This request shall be made to the ARP screening officer for an extension to initiate a request; to the warden for the first step and to the assistant secretary of Adult Services for the second step. The inmate must certify valid reasons for the delay, which reasons must accompany his untimely request. The issue of sufficiency of valid reasons for delay shall be addressed at

14

each step, along with the substantive issue of the complaint.

c. The warden may request permission for an extension of not more than five days from the assistant secretary of Adult Services for the step one review/response. The inmate must be notified in writing of such an extension.

d. In no case may the cumulative extensions exceed 25 days.

5. Problems of an Emergency Nature

a. If an inmate feels he is subjected to emergency conditions, he must send an emergency request to the shift supervisor. The shift supervisor shall immediately review the request and forward the request to the level at which corrective action can be taken. All emergency requests shall be documented on an unusual occurrence report.

b. Abuse of the emergency review process by an inmate shall be treated as a frivolous or malicious request and the inmate shall be disciplined accordingly. Particularly, but not exclusively, matters relating to administrative transfers and time computation disputes are not to be treated as emergencies for purposes of this procedure, but shall be expeditiously handled by the shift supervisor, when appropriate.

6. Sensitive Issues

a. If the inmate believes the complaint is sensitive and would be adversely affected if the complaint became known at the institution, he may file the complaint directly with the assistant secretary of Adult Services (second step level). The inmate must explain, in writing, his reason for not filing the complaint at the institution.

b. If the assistant secretary of Adult Services agrees that the complaint is sensitive, he shall accept and respond to the complaint. If he does not agree that the complaint is sensitive, he shall so advise the inmate in writing, and return the complaint to the warden's office. The inmate shall then have five days from the date the rejection memo is received in the warden's office to submit his request through regular channels (beginning with the first step if his complaint is acceptable for processing in the administrative remedy procedure).

7. Records

a. Administrative remedy procedure records are confidential. Employees who are participating in the disposition of a request may have access to records essential to the resolution of requests. Otherwise, release of these records is governed by **R.S. 15:574.12**.

b. All reports, investigations, etc., other than the inmate's original letter and responses, are prepared in anticipation of litigation, and are prepared to become part of the attorney's work product for the attorney handling the anticipated eventual litigation of this matter and are therefore confidential and not subject to discovery.

c. Records will be maintained as follows.

I. A computerized log will be maintained which will document the nature of each request, all relevant dates, and disposition at each step. Each institution will submit reports on administrative remedy procedure activity in accordance with Department Regulation No. C-05-001 "Activity Reports/Unusual Occurrence Reports-Operations Units-Adult."

ii. Individual requests and disposition, and all responses and pertinent documents shall be kept on file at the institution or at headquarters.

iii. Records shall be kept at least three years following final disposition of the request.

8. Transferred Inmates. When an inmate has filed a request at one institution and is transferred prior to the review, or if he files a request after transfer on an action taken by the sending institution, the sending institution will complete the processing through the first step. The warden of the receiving institution will assist in communication with the inmate.

9. Discharged Inmates. If an inmate is discharged before the review of an issue that affects the inmate after discharge is completed, or if he files a request after discharge on such an issue, the institution will complete the processing and will notify the inmate at his last known address. All other requests shall be considered moot when the inmate discharges, and shall not complete the process.

10. Annual Review. The warden shall annually solicit comments and suggestions on the processing, the efficiency and the credibility of the administrative remedy procedure from inmates and staff. A report with the results of such review shall be provided to the assistant secretary of Adult Services.

H. Effective Date. Only ARP requests filed on or after the effective date of this regulation, as adopted pursuant to the Administrative Procedure Act, shall be governed by this procedure. All ARP requests filed prior to the effective dated will be administered in accordance with the provisions of LAC 22:I.324, formerly LAC 22:I.325, Administrative Remedy Procedure.

I. Request for Administrative Remedy Form (ARP-1)

ARP-1

ADMINISTRATIVE REMEDY PROCEDURE

THIS IS A REQUEST FOR ADMINISTRATIVE REMEDY

_____  _____

Inmate's Name DOC # Date of Incident/Complaint

_____

Place and Time of Incident/Complaint

Describe Nature of Complaint (i.e. WHO, WHAT, WHEN, WHERE, and HOW)

_____
_____
_____
_____
_____
_____

_____  _____

Inmate's Signature DOC # Date

_____

TO:_____

Inmate's Name and DOC #

( )ACCEPTED:Please respond to the inmate within 40 days.

( )REJECTED:Your request has been rejected for the following reason:

_____

_____

_____

_____

_____

Date ARP Screening Officer

J. First Step Response Form (ARP-2)

ARP-2

ADMINISTRATIVE REMEDY PROCEDURE

FIRST STEP RESPONSE FORM

TO: _____

Inmate's Name DOC # Living Unit

FROM: _____

_____

_____

First Step Respondent Title

Response to Request Dated_____ Received by Inmate_____

Instructions to Inmate: If you are not satisfied with this response, you may go to Step Two by checking below and forwarding to the ARP Screening Officer within 5 days of your receipt of this decision.

_____
_____
_____
_____
_____

_____
_____
_____

( ) I am not satisfied with this response and wish to proceed to Step Two.

REASON:

_____
_____

_____  _____

Date Inmate's Signature DOC #

K. Second Response Form (ARP-3)

ARP-3

ADMINISTRATIVE REMEDY PROCEDURE

SECOND STEP RESPONSE FORM

TO: _____  _____

Inmate's Name DOC # Living Unit

Response to Request Dated_____, Received in this office on _____

_____
_____
_____
_____
_____
_____
_____
_____

19

_____

_____

_____

_____

_____

_____  _____

Date                             Secretary